### [ MEAD & INGRAM v. TURNER ]

John Richards Attourney to Cap$^t$ William Mead & Ralfe Ingram of London plantiffs against Ephraim Turner Defend$^t$ in an Action of the case for non payment of the sume of tenn pounds sixteene shillings in London beeing the ballance due to said Mead & Ingram from said Turner for a parcell of Linen bought by said Turner of them the said Mead & Ingram Anno 1664 or 1665 with Due Damages according to Attachm$^t$ Dat the 7th Day of 10 m° 1671 . . . the Jurie . . . found for the Defend$^t$ Costs of Court the plantiff appealed from this Judgment to the next Court of Assistants & the said John Richards & Peter Lidgett in twenty pounds apeice acknowledged themselues bound to . . . prosecute his Appeale . . .

[ A copy of the bill for the goods in question is in S. F. 1104.14, on the same sheet as the power of attorney from Mead and Ingram to Richards:

London 21th March 1664

Bought by Ephraim Turnor of New England Merchant of William Mead and Ralph Ingram of London the goods following made vp in one pack marked & Nombered & per margent & delivered to the Said Ephraim Turnor.

N° 1 It Broad w$^t$ Canvas q$^t$ 36¼:18½: is 54¾ ells at 18$^d$ per ell . li 4:02:01½
2 It 19 ells holland, at 2$^s$ 10$^d$ per ell . . . . . . . . . . . . . li 2:13:10
3 It 19 ells holland, at 4$^s$ 4$^d$ per ell . . . . . . . . . . . . li 4:02:04
4 It narrow blewes q$^t$ 32¾· 33½: 34¾: is 101. yds, at 10$^d$ per yd li 4:04:02
It 5 ells of flaxen Cloth to wrape aboute y° truss at 10$^d$ ell . . li 0:04.02

It 4 ells Course Canvas to pack in at 8½$^d$ per ell . . . . . . li 0:02:10
5 It 52 ells yd broad Dowlas at 2$^s$ per ell . . . . . . . . . li 5:04:00
It Shipping Charges & Primage . . . . . . . . . . . . . li 0:02:07

$\overline{\phantom{xxxxxxx}}$
20:16:00½

The 28th Decem$^r$ Ann$^o$ 1667 Rec$^{ed}$ in parte: li 10$^{li}$

William Mead
Ralph Ingram

. . . true Coppie as Attests FreeGrace Bendall Cler.

A copy of the Bill of Exchange (or, as Turner claimed, Obligatory Bill), is in S. F. 1104.8:

Boston in New England 16th November 1665

Thirty Dayes after sight of this my first Bill my Second & third of the Same tennor & Date not being paid I engage to pay or Cause to bee paid To Cap$^t$ William Mead or his order in London the full & Just Summe of Twenty pounds Sixteene shillings sterling: being for the like vallue here Receed of Ephraim Turnor, for the punctuall performance hereof I bind my Selfe heirs & assignes as witness my hand

Rich$^d$ Thurston

Witness
    Richd: Wayte
    Ben: Phillips
This is a True Coppie as Attests FreeGrace Bendall Cler

The following correspondence is also on record (S. F. 1104.9–12):

London y$^e$ 26th Feb$^r$ 1665

M$^r$ Ephraim Turnor S$^r$

Yours of the 20th November is Come to hand w$^{th}$ bill of Exchange w$^{ch}$ I shall shew soe Soone as M$^r$ Thurston Comes to towne but our Commodities are soe Extreemely risen & y$^e$ dangers of y$^e$ sea soe great that I have not adventured to send you any, fearing thereby to Incurr yo$^r$ hard thoughts of me if they should Come Safe to yo$^r$ hands w$^{ch}$ is very Doubtfull there being warrs proclaimed as well against y$^e$ french as y$^e$ Dutch: S$^r$ these are the need full from your Louing Friend

Will: Mead

In 1104.12 is the copy of a deposition made under oath by Eusebius Sheppherd before the Mayor and Aldermen in the Guildhall, London, to the effect that he witnessed "Henry Taylo of Boston in New England Chirurgeon" seal and deliver two bonds to Mead and Ingram, now shown in court and dated April 11, 1668; and that he saw "Thomas Norman Junior of Boston in New England Merchant" seal and deliver a bond to the same; and that Ephraim Turner bought a certain pack of merchandise from Mead and Ingram, on which 10$l$ 16$s$ ½$d$ were still due.

John Richards' reasons for appeal of the case from this court have not been preserved, but John Turner's answer is in S. F. 1104.5:

John Turner as Suerty for Ephraim Turner his Answer to y$^e$ reasons of Appeale p$^r$sented by John Richards as Atturney to Cap$^t$ william meade and m$^r$ Ralph Ingram in y$^e$ caise depending betwixt s$^d$ John Richards Attorney &c and Ephraim Turner.

To y$^e$ first

The Defend$^t$ hath proued by Cap$^t$ meads owne letter bereing date 26 febr. 1665 y$^t$ y$^e$ Bill was a bill of exchange, & so owned by him. 2$^{ly}$ though not named in y$^e$ bill a bil of exchange yet it carrys y$^e$ forme of a bill of exchange w$^{ch}$ a man draws vpon him selfe; for it is as much as an accepted bil, drawn vpon another, 3$^{ly}$ his hairs &c he sath are bound. I answer when a man hath once accepted a bill of exchange his hairs are bound, Lex mec. 266.[1] 4$^{ly}$ all bills drawne vpon an other & p$^r$sented by a publique notary when they are accepted he is a witnes to y$^e$ acceptance, if not accepted he protests them, w$^{ch}$ in this caise was not done as it shold haue bene, & y$^t$ w$^{th}$in 3 dajs at furthest acording to y$^e$ natuer of bils of exchange as apears in Lex Merc$^t$ in y$^e$ aduise about bills of exchange fo, 16, 24, but it is no losse to m$^r$ meade nor weakening to y$^e$ bills of exchange y$^t$ they were witnesed. 4$^{ly}$ y$^t$ al y$^e$ 3 bills ought to be deliuered to y$^e$ Cr. is a mistake & Contrary to y$^e$ law of merchants one should be kept by y$^e$ receiuer of y$^e$ bill of exch. to sho he hath discharged his trust. y$^r$fore y$^e$ bills Legally proued to be by Exchange.

To y$^e$ 2$^d$

Great neede of a protest if not paid because w$^{th}$out it Turner was left w$^{th}$out recouery & must recouer if euer by power from meade, w$^{ch}$ now he is for euer made vncapable of, if y$^e$ drawer were neuer so able, for want of a protest in time, 2$^{ly}$ for y$^e$ man going out of y$^e$ Country w$^{th}$ y$^e$ bill he drew vpon him selfe, it stoode Cap$^t$ meade more in hand to prosecute him by protest, and also attaichm$^t$ for he might haue donne it by attaiching y$^e$ money in his owne hands. for Turner Knew Cap$^t$ meade had suffitient in his owne hands of Thirstons to pay him selfe w$^{th}$, w$^{ch}$ was y$^e$ ocation of Turner receiueing Thirstons bill, & m$^r$ Richards could not denie in Court but he sent goods by Thirston y$^t$ voyage, w$^{ch}$ might be suffitient to pay this bil, y$^t$ was consignd to Cap$^t$ Meade, and though Turner promis by letter paym$^t$ of this 10$l$ on Condition, yet it wil not bear y$^t$ inferans m$^r$ Richards maks but y$^e$ Contrary. for if Turner might haue had such a parsel of goods sent him then, w$^{ch}$ he might haue gained much more by, then he would pay him else not. for Turner knew wel y$^t$ Cap$^t$ meade had made Thirston his debtor & not Turner by receiueing part of y$^e$ bill to witt ten pounds as by leter 2 Ap. 1668, & yet had not protested his bill in time nor indeede not at al, so y$^t$ it neuer was recouerable by Turner as apears by Lex Mer$^{ct}$ fol. 264. and also as before fo, 16. 24. it is conuenient a protest be drawne w$^{th}$in 24 howers but must not exceed 3 dajs. y$^r$fore now Turner is not capable to be put in power to receiue it though y$^e$ drawer were here p$^r$sent & neuer so able; for want of a protest according to Law.

---

[1] The frequent mention in this case of Lex Mercatoria refers to a well-known English legal treatise, Consuetudo vel Lex Mercatoria, or The Ancient Law-Merchant, by Gerard Malynes. First published in 1622, this book went through several editions during the seventeenth century. A comparison of Turner's references in the text shows that he used the latest edition, that of 1656. A popular legal tract, Advice Concerning Bills of Exchange by John Marius, was bound in with this edition. Several of Turner's references in the text are to the Advice of Marius, and not to the treatise of Malynes.

To y^e 3^d

for y^t y^e p^l saith y^t y^e def^d alledgeth y^r is one of y^e bills yet in y^e hand of Meade & y^t it is but A bare affermation w^th out profe, I would know whether y^e p^l use to take witnes what bills of exchange he incloses in his letters, but we know y^t y^e end of 3 bills of exchange is that too may be sent away and one kept, & y^rfore it is vncharitable to say he beleues Turner kept 2 of them, for y^e gentlemens repute we blemish them not.

To y^e 4th

Sending a bill of exchange drawne upon a mans selfe and y^e party y^t it is sent vnto owes y^e drawer a greater some for fright, I thinke it is not onely a fine way of returnes, but y^e fineest way I can devise.

To y^e last

That there once was such a debt & y^t y^e debt is not onely legally but honestly paid I hope hath bene proued, and if it be lost it is not Turners but meads neglect and losse, and y^e Court gaue iudgm^t according to Law & witnes, in this caise w^ch I doubt but this hon^rd Court wil confirme

5. 1^mo 1671/2

John Turnor

The Court of Assistants, on March 5, 1671/72, reversed the former judgment and awarded 10*l* 16*s* and costs to Meade and Ingram (Records of the Court of Assistants, iii. 212). Turner then pled for a review of the case (S. F. 1104.6):

Ephraim Turnor his pleas for Reueiew of a Case tryed att the Court off asistants in march Last wherein m^r John Richards atturny to Cap^t Wm Mead & m^r Ralph Ingorum of London was plaintiff and I the said Ephraim Turnor Defendant:

1st If I was Cast by mr Richards his plea that the Bill was not a Bill of Exchang but an obligatory bill therein he ownes It to be a Bill & Lex mercatoria In Aduice Concerning Bills of Exchang proous it to be a bill of Exchg: title whatt Exchange Is folio 1: where he saith Reall Exchange is nothing els but to giue or take vp mony in one Citty or town to the End to haue againe or Restore the Just vallue thereof in another town according to the price shall be agreed vppon Betwene the taker and deliuerer to allow or pay for the Exchange of mony and the Loss of time which will be from the time the mony Is taceen up or deliuered vntill it be Restored:

2^ly that I paid mony heer testefieth Daniell Turrell Senior that mr Thurston was to pay It In England testefieth his Bill which makes it by the Law aboue Recitted a Bill of exchange wherein he is obliged to pay by agrement the same vallue possitiuely in England that he took vp of mee heer

3^ly For Daniell Turrells Euidence It is New Euidence neuer in Court Before: to Answer a plea of mr Richards to mee that though Cap^t mead was to pay Thurston freight yet that was vppon the Shipps acc^ott But that this was a partiquler debt thurston owed mee I Answer by that Euidence as written: It was vppon the Shipps acc^ott and were It Alowable for me to Sware in this Case I Coold Safely that the Shipp Coold not haue gone away If I or Sum other had not paid that mony and aboue as much more which I did pay

4^ly If still the Bill be denied to be a bill of Exchange the word Exchange not mentioned I Answer as aboue in Lex mercatoria folio 1 whatt Exchange is

5$^{ly}$ If said it is noe bill of Exchange Beccaus heirs and assighnes bound in it to that I say matter & forme makes euery thing in Ciuills or other wais   In this heer is matter its mony paid heer (for mony to be paid In England as in Lex mercatorea folio 1 title bills of exchang) as by the testemony of daniell Turrell for soe much paid him heer for the Shipps acco$^{tt}$ by Thurstons order and by Thurstons Bill for the Like vallue to be paid in England for Soe much Recceaued of me heer: which prooues it I hope a bill of Exchange

6$^{ly}$ If it be said bills of Exchg are the greatest things Bindeing and Nothing Can be more strong: yet Adding heirs and assighnes takes not from Butt adds to If Any thing be so be Added and alters not the power of a bill of Exchange especialy a person drawing vppon him selfe: and for forme it is drawn att or after soe many dais sight of this my first Bill my Second and third of Same Teanor[1] and date not paid: or of this my Second my first and third or of this my third now in Court my first and Second of the same Tenor and date not paid soe that heer is the forme as in the Bill and the matter mony paid heer for mony to be paid In England which makes it Exchange as Lex mercatorea folio 1 title aduice   It being soe it is accepted by the drawer as by Capt Meads Letter in Court 26 of 12$^{mo}$: 65: wherein he ownes it to be a Bill of Exchange and Richard Thurston being drawer and accepter is bound to Capt mead and not my selfe as saith Lex mercatorea folio 13 Title Aduice: A Bill of Exchange which Is accepted and att the time not punc[k]tualy paid: sum think If they Caus a protest to be made on such a Bill for non payment that by protesting the party accepting is freed and that they Reserue theire Right onely against the drawer (heer drawer and acceptor are one person) but the party accepting is soe far from Being freed by protesting as that he is more Liable which Is Richard Thurston not Ephraim Turnor

7$^{ly}$ Besides this bill was accepted and the accepter therefore Ingaged as in folio 16 Title 24 houers for acceptance: and if it was verball acceptance (onely) which this Can not but bee as appears by Capt meads Letter yet that Bindeing title verball acceptance folio 17[2]

9$^{ly}$ It Being drawn by the acceptor vppon him selfe and protest not made for non paiment of the whole or for part as Lex mercatoria folio 17 title accept for part Saith it ought to bee: you must take such his acceptance for part but Caus the Bill to be protested and send the protest away to the party that sent you the Bill:  But Capt mead neuer sent mee nor I neuer saw the bills sent nor heard of It being Come to New England vntill 1671 which was many years after it was drawn (and accepted by the drawer as per Capt meads Letters in Court) who ought presently to haue protested the bill as Lex mercatorea folio 22: you must presently protest for non paiment of the Remaining Sum and the Receauing part of the mony vppon the Bill doeth not weaken the bill or protest for not payment or any Legall Coures against the drawer or acceptor (Both which Is Richard Thurston ∴ Not Ephraim Turner) but Rather strengthens the same. and the protest is to be made in three dais after the mony due that was soe many days

---

[1] This refers to the common practice of giving bills of exchange in sets of three, only one of which was to be paid; this was to allow for possible losses of one or two bills in transmission.

[2] This would have been true of a regular bill of exchange payable at a specified date, but the law required a bill payable "after sight" to be accepted in writing because only thus would the date for payment be made definite on the instrument.

after sight of the bill ∴ which was shown to Richard Thurston by Cap$^t$ mead or his order as per his Letter and yet not protested nor Retturned Back to mee as he ought to haue done which If he had done with an assighnment on the back side to mee for what Left vnpaid I coold haue heer Recouered as John Turnor and Elizabeth Alden Can testefie ∴ thurston whoos wife went away about two year after him and Left heer more then Enuf to pay that which was after wards sent to her Besides aboue thirtene pound I paid for her to m$^r$ Simon Lynde and good wife Farnum who Can testefie the same soe that if the bill had Bene protested And againe Assighned to mee It being made positiuely to Cap$^t$ Mead I Coold then haue Recouered it of his Estate and If I had not then might I haue Bene Blamed as Justly as Cap$^t$ Mead now Suffers

10$^{ly}$ further the acceptor of this bill which is Richard Thurston is Bound to the party to whom payable Saith Lex mercatorea, folio 27

These things Considered I hope the Honored Court and Jury will finde not with standing all pleas of the Now deffendant and the word Exchange in the Bill omitted that it is a Reall Bill of Exchange Comeparing my first and second pleas together ∴ And noe protest being made in time according to that Law Lex Mercatorea folio 24 nor for non payment of part as folio 22 (which I desire may be perused by Court and Jury and Seriously Considered off) nor Retturned with Assighnment in time: for the Reasons mentioned that Richard Thurston Is the proper Debtor to Capt mead and not the Now plaintiff ∴

And if he the proper Debtor then my Letter Noe owning of the debt as due from mee ∴ for that Is But Conditionall noe more then If Ephraim shoold say to William he will pay him soe much mony for Richard If John will Lett him haue such or such a percell of goods such or such a peice of Land which Condition If performed By William then Ephraim Is obliged But this Condition was Neuer performed By William Mead therefore Ephraim Turnor not obliged the promis Being onely made vppon Conditions and as an Incouragement to him to send mee ouer the said goods then writt for which If att that time I had Recceaued shoold haue gained by them more then that ten pound

More ouer I sent two Bills home to England and Neither as yet I know off Retturned and though one be w$^{ch}$ m$^r$ Richards vnwillingly produst ∴ yet the other may be deliuered vp to the drawer and acceptor viz: Richard Thurston vppon the Reseipt of the mony and If I forst to pay It againe then Cap$^t$ Mead doubly paid which I doubt not woold bee

The legal problems raised by this case are complicated by the unusual form of the instrument involved. It appears from the facts that Turner in New England, being indebted to Mead in London for goods as itemized, sent him an instrument for the amount due, payable to Mead's order and signed by Thurston, a sort of agent of Turner's who had received from him money or some other equivalent. Thurston was probably in Boston when the instrument was signed in November, but evidently it was expected that Thurston would be in London the following spring and pay the amount due.

The normal course of business would have been for Turner to sign a bill of exchange ordering his agent Thurston to pay the amount of the debt

to his creditor Mead. If such a regular bill of exchange had been drawn, payable thirty days after sight, then the law of merchants (which Turner's answer has in mind) required the holder to present the bill as soon as practicable to the drawee (Thurston) for acceptance, viz., his promise to pay the bill, which he ought to write across its face. This presentation for acceptance would constitute "sight," and the bill would then become due for payment thirty-three days later, three days of grace being added to the thirty days specified in the bill. When the day of payment arrived the holder must again present the bill to the drawee (Thurston) for payment. After either acceptance or payment was refused, then the holder had to give notice of the dishonor within a reasonable time to the drawer (signer) of the bill. Failure to make these two presentments to the drawee (Thurston) or to notify the drawer (Turner, it is assumed) of any dishonor would release the drawer from further liability on the bill or the original debt.

But the instrument did not take the regular form of a bill of exchange discussed in the preceding paragraph. Although it describes itself as a bill, it seems to be really a promissory note, for it contains no order addressed to any third person as drawee, but only the promise of the signer to pay the specified amount to Mead or his order. Instead of drawing his own bill of exchange upon Thurston, Turner really gave a note signed by Thurston. In the first paragraph of his answer Turner interprets this instrument as a bill drawn by Thurston upon himself, but this construction would make no difference even if it accorded with the facts, because the English courts have treated such an instrument as a note. Promissory notes were in actual use in England in 1665, but there was considerable doubt whether they were negotiable instruments like bills of exchange, and the point was not finally settled until they were declared negotiable by Act of Parliament in 1704. This uncertainty may explain Turner's attempt to treat this instrument as if it were a bill of exchange.

The law of merchants did not require a note to be presented to the maker in order to make him liable. Consequently, Mead's inactivity did not release Thurston. Turner was in a somewhat different position. He could not, as he tried to do, claim the benefit of a discharge under the law of merchants, since he was in no way a party to the instrument. His whole claim that he was entitled to the formalities of presentment and notice of dishonor, as if he had been the drawer of a regular bill of exchange, was unfounded. At the same time Turner may have had a real grievance. If he is to be believed, he supposed that he had paid his debt by this note and was kept ignorant for some years that Thurston had not taken care of it. He says that if he had known of the dishonor he

could have reimbursed himself out of property belonging to Thurston, which remained in New England for more than two years after the note was given but was no longer available at the time of the suit. Probably this story of hardship impressed the jury sufficiently to get a verdict for Turner. However, it is uncertain whether there was a legal defense on the facts. Possibly the Court of Assistants thought that Turner should have communicated with Thurston in order to find out whether the instrument had been paid and not relied on the absence of information.]